[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Paul Pilch (Paul) and the defendant, Lisa Bonaker (Lisa) met in the early 1990's and dated during 1992 and 1993. They began living together the following year. At some point Lisa left but she and Paul got back together in August 1994 and remained together until July 27, 1996. They leased an apartment at 95 Rowley Street in Berlin, Connecticut. They had a verbal lease. The arrangement between the two of them was that household expenses would be split.
Paul and Lisa rented a storage bin where each of them put belongings which were not going into the apartment. Each took a portion of the bin area for his own and her own belongings.
In October of 1994 Paul purchased an Akita dog which he gave Lisa as a gift, described as a make-up gift after an argument. The dog was purchased from a pet shop. Lisa was the registered owner on the dog license; she took the dog for his shots; she took him to training classes for which she paid $50; and she took the dog for his walks. This was the pattern with the dog during the time Lisa and Paul lived together. When Lisa moved out on July 27, 1996 Paul did not permit her to take the dog claiming it was his.
Paul's damage claim as to the dog is that Lisa had the dog neutered without his permission. Paul had talked to Lisa about breeding the dog. She had been opposed to that, first because they lived in an apartment and second because they both worked and were out of the apartment for long periods of time. Also, the dog was bought from a pet shop and the breeder sheet did not have an AKC stamp. Finally, neither of them had any experience CT Page 5230 breeding dogs.
In 1995 Lisa won a 27" Sony television set in a contest sponsored by the Miller Brewing Company. She was not permitted by Paul to take the TV when she left. Paul claims he no longer has the TV; that he returned the TV to the contest sponsor because he worked for Fordham Distributors an affiliate of Miller Brewing Company and was concerned that Lisa would be considered a family member related to an employee of an affiliate of Miller Brewing Company.
Lisa left behind in the bathroom of the apartment a gold cross and heart, contact lenses, curling irons, hair dryer and cosmetics. She did not have time, within the time allotted for the move, to clear out items in the bathroom. Because of the acrimonious nature of the departure, the police had been called to the apartment. Lisa was given a set number of hours to get her belongings out. Family members assisted her but time ran out before they could get to the bathroom.
A gas grill and gardening tools kept in a common hallway and an area rug in the apartment were left behind by Lisa because of time constraints. These were subsequently left behind by Paul when he moved out. The rug was left in the landlord's garage.
A medicine cabinet which was to have been removed when they left the apartment, and the old one put back, was left behind by Paul when he moved out. Lisa also left behind a portable telephone.
An entertainment center which was to have been paid for by both Lisa and Paul was fully paid for by Lisa. Paul kept the entertainment center when Lisa left.
Prior to the move Lisa and Paul had made lists of the personal property in the apartment. One was a list of Lisa's property. One was a list of Paul's property. One was a list of disputed items.
Lisa was not permitted to remove any of the disputed property from the apartment. These were the following: entertainment center, Christmas Throw from Lisa's aunt, items on top of the refrigerator (pyrex measuring cup, plastic strainer), wooden tea holder, hot water bottle, tote bag with dogs on it, television set, game boy and accessories. Also on this list was the notation CT Page 5231 that Lisa gave back to Paul the engagement ring.
Lisa did not take the dog when she moved out and when she went back for him two days later Paul refused to give her the dog. Lisa went to the police and was told she would have to go to court to resolve the issue. In the meantime Paul had gone to the town hall and put his name as the dog's owner replacing Lisa's which had been of record since 1995 when the dog was registered for his first dog license.
On the same day that Lisa moved out of the apartment she also went to the storage bin which had been leased by them and removed her personal property
In count one of his complaint Paul identified as missing from the storage bin a diamond ring, chimes, tennis rackets, Christmas ornaments, gun rack, Pfaltzgraft/Yorkstown pieces, bedroom furniture and tools. Lisa paid for the chimes. Paul put nothing toward their cost. The gun rack had been stored at Lisa's parent's home and had been returned to Paul. Lisa took the one tennis racket which Paul had given her as a gift. Lisa gave back her diamond engagement ring the day she moved out in return for which she was to have received back a diamond earring she had given Paul. Lisa did not get the earring. As for the bedroom furniture none was removed by Lisa as evidenced by the July 27, 1996 disputed list.
Paul does not dispute that he has the entertainment center, that he has the Christmas throw, that he had the television set, that he has the area rug, that he had the gas grill and portable phone. Paul admits that he saw the gold cross and heart in the bathroom but, claims not to have them. He does not dispute the items left behind by Lisa in the bathroom, having seen them there after she left. However, he states he had other girlfriends in after Lisa left and that these guests may have taken some of these items as their own.
Lisa's counterclaim asserts ownership of an Akita dog, a diamond ring, a 27" Sony television set, a gold cross and heart, a pair of contact lenses, a curling iron, a hair dryer, a gas grill, a telephone, a wheelbarrow, rose clippers, gardening tools and a medicine cabinet.
Paul claims the wheelbarrow was a gift to him from Lisa, that Lisa did not work in the yard and therefore had no use for it. In CT Page 5232 fact, Lisa regularly planted flowers along the perimeter of the yard. Her father observed these over time and likened Lisa to her mother who had a green thumb.
In his second count Paul claimed damage to furniture owned by him. At trial only one piece of furniture was identified, an armoire five feet tall. This was located on Paul's side of the storage bin and had a blanket over the top on which Paul stacked other of his belongings. A picture showing a scratch on the top of the armoire was put into evidence. Since this piece was not taken from the bin we conclude that the scratch was already there before Lisa went into the bin and took her belongings out.
In his third count Paul claimed he had incurred bills which Lisa was to have shared in and had not. One was the July rent for which Lisa had a cancelled check covering her portion of the July rent. Another was an electric light bill which had not yet been received when Lisa moved and for which Paul had not made demand for payment.
Paul has admitted retention of the items listed on the July 27, 1996 disputed list. Of these the court finds the more credible evidence to be that Lisa paid for the entertainment center with no payment toward its cost by Paul and that the Akita dog was a gift to Lisa from Paul. The value of the entertainment center is found to be $320.00. The value of the Akita dog is found to be $534.
As to the 27" SONY television set, Paul's withholding the set and then disposing of it deprived Lisa of property having a value of $600. This court finds less than credible Paul's expression of concern about his job a year and a half after Lisa takes possession of the set. Nor do we find the writing dated September 21, 1996 by Sally DeNovelis as determinative of the issue of ownership of the set. The writing was clearly prepared at Paul's request. It did not go to Lisa. It was prepared one month after August 27, 1996, the date Paul, according to the writing, notified DeNovelis. The writing though asking for return of the set, does not acknowledge receipt of the set.
As for the items left behind in the bathroom, Paul admits seeing the jewelry and the other items Lisa left behind. At a minimum Paul had the responsibility to contact Lisa and give her a reasonable opportunity to retrieve her belongings from the bathroom and, while he had them to exercise reasonable care to CT Page 5233 safeguard them. The court finds the value of the gold cross and heart to be $259, the contract lenses $275, the blow dryer $34.99, the curling irons $47.98, the lotions, cosmetics and cleaning solutions $80.00 for a total of $696.97. The court finds that Paul had a similar responsibility as to the gas grill and area rug. The value of these are found to be $177.85 for the gas grill and $39.75 for the area rug.
We look next at the claimed losses by Paul of items in the Storage bin. We have already addressed the chimes, tennis racket, gun rack and bedroom furniture. We have left to address his mother/father diamond ring. There was no description given of this ring either verbally or in picture form and Paul did not know what its value was. We have only Paul's statement that the ring ever existed. Lisa had never seen it or known of it. As for the Christmas ornaments, the Pfallggraff/Yorktown pieces (a four piece setting of dishes) and tools in the storage bin, the court has Paul's bare claim that these were missing and Lisa's testimony that she did not take anything belonging to Paul from the storage bin. Their credibility is for this court as the factfinder to determine. In the case of the diamond ring, Christmas ornaments, dishes and tools we have nothing to corroborate that in fact these items were in the boxes Paul kept in the storage bin. Nor, can we find that Lisa took them based merely on Paul's assertion that she did. This court has found Paul to be less credible because of the number of instances during the course of this trial that Lisa has been able to produce evidence which has disproved certain of Paul's claims. Lisa's claims on the other hand were documented and the personal property involved were acknowledged by Paul as being where Lisa said they were.
On the facts found the court concludes that the plaintiff, Paul Pilch, has failed to prove by a preponderance of the evidence the allegations of counts one, two, three and four of his complaint. Accordingly, judgment may enter in favor of the defendant, Lisa Bonaker, on Counts one, two, three and four of the complaint.
On the facts found, the court concludes that the counterclaim plaintiff, Lisa Bonaker, has proven by a preponderance of the evidence the allegations of counts one and two of the counterclaim. The damages found as to each of these counts is $2,080.56. Since these damages duplicate each other, the court awards damages in the amount of $2,080.56 to the counterclaim CT Page 5234 plaintiff.
Count three alleges theft and seeks treble damages under the provisions of C.G.S. § 52-564. A statutory award of treble damages is an extraordinary remedy for which proof by clear and convincing evidence is required. See Schaffer v. Lindsey,8 Conn. App. 96 (1986). On the facts found the personal property involved in this third count claim and its retention by the counterclaim defendant while ownership was at issue, does not make out a claim of theft by clear and convincing evidence. Accordingly, judgment may enter for the counterclaim defendant, Paul Pilch as to count three of the counterclaim.
Hennessey, J.